UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

KAFOA MO-TALAU HEFA,

    Plaintiff,

v.

MICHAEL HANRATTY *et al.*,

    Defendants.

CASE NO. 3:20-cv-05475-JCC-JRC

REPORT AND RECOMMENDATION

NOTED FOR: January 29, 2021

Plaintiff, proceeding *pro se*, brings this matter under 42 U.S.C. § 1983.  The case has been referred to the undersigned magistrate judge (*see* 28 U.S.C. § 636(b); Dkt. 2), and the matter is before the Court on defendants' motion to dismiss.  *See* Dkt. 16.  Defendants have requested oral argument on their motion, but the Court denies the request because this matter can be decided on the briefs and oral argument would not be of assistance.

Plaintiff brings claims related to defendants allegedly placing plaintiff on a "dry cell" watch when he was suspected of smuggling contraband into his prison and then extending the watch without following appropriate Department of Corrections ("DOC") procedure for doing

REPORT AND RECOMMENDATION - 1

so. The motion to dismiss should be granted in part and denied in part. Specifically, plaintiff's claims against defendants in their official capacities for damages are barred by the Eleventh Amendment and should therefore be dismissed with prejudice. Further, plaintiff's claims against defendant Stephen Sinclair (the DOC Secretary) should be dismissed with leave to amend, since plaintiff only names defendant Sinclair without explaining the basis for any cause of action against him. Regarding his claims against defendants in their individual capacities under § 1983, because plaintiff has failed to allege facts sufficient to establish viable claims of violation of his constitutional rights, his claims should be dismissed with leave to amend—except for his claim that his right to procedural due process was violated, which should survive the motion to dismiss.

## BACKGROUND

### I. Allegations of the Complaint

Plaintiff, who is incarcerated at Coyote Ridge Corrections Center ("CRCC") (Dkt. 4, at 2), brings claims against a CRCC lieutenant (Michael Hanratty), a CRCC internal investigations unit officer (Arin Reining), and defendant Sinclair. *See* Dkt. 4, at 3. Plaintiff alleges that on September 8, 2019, after an extended family visit, defendant Reining told plaintiff that she believed plaintiff was smuggling drugs into CRCC and that he had drugs on his person. Dkt. 4, at 4. Plaintiff denied her accusations, and defendant Reining allegedly said that she would "get" plaintiff and that his wife would not be able to visit him again. *See* Dkt. 4, at 4.

Plaintiff claims that officers then placed him on dry cell watch—"Dry Cell Search/Watch detainment." Dkt. 4, at 4. He alleges that he was strip-searched, required to provide a urine sample (which tested negative), and forced to wear a full body suit, with his ankles and wrists zip-tied and taped. *See* Dkt. 4, at 5. He was placed in a holding cell with no toilet or sink access and told that he had to remain under surveillance for "84 hours or 3 normal bowel movements,

1  whichever occurred first." Dkt. 4, at 5.  Plaintiff alleges that he had to wait for guards to be

2  present before he could urinate or have a bowel movement.  *See* Dkt. 4, at 5.  Plaintiff asserts

3  that the conditions were "agonizing" and that in the meantime, he struggled to sleep under bright

4  lights that were on all night, on a thin mattress, and with no underclothing or socks and only one

5  blanket.  Dkt. 4, at 5.

6  Plaintiff asserts that he had three bowel movements, all free from narcotics, over a nearly

7  77-hour period, which should have satisfied the DOC's dry cell watch policy.  Dkt. 4, at 6.

8  However, defendant Hanratty then ordered a 24-hour extension.  Dkt. 4, at 6.  Plaintiff alleges

9  that this extension violated DOC dry cell watch policy because defendants Hanratty and Reiner

10 lacked the authority to extend a dry cell watch.  *See* Dkt. 4, at 6.

11 Plaintiff was released from dry cell watch on September 12, 2019, at 4:30 p.m., after

12 nearly 101-hours.  *See* Dkt. 4, at 7.  Upon release, plaintiff alleges that he learned his wife had

13 suffered a miscarriage.  *See* Dkt. 4, at 7.  Based on these allegations, plaintiff claims that he has

14 been subjected to cruel and unusual punishment, false imprisonment, unlawful restraint, and

15 unlawful search and seizure; violations of his constitutional rights to due process and equal

16 protection; and conspiracy to deprive him of constitutional rights.  Dkt. 4, at 4.  Plaintiff seeks

17 damages and injunctive relief—namely, the removal of the incident from DOC records.  Dkt. 4,

18 at 15.

19 **II.  Motion to Dismiss**

20 Defendants have appeared and filed a motion to dismiss.  *See* Dkt. 16.  With the motion

21 to dismiss, defendants have filed a notice of dispositive motion, informing plaintiff that if the

22 motion is granted, his claims will be dismissed without a trial or evidentiary hearing.  *See* Dkt.

23 16-1, at 1.  Plaintiff has filed a response (Dkt. 18), and the matter is ripe for review.

24

**DISCUSSION**

**I. Legal Standard**

Federal Rule of Civil Procedure 12(b)(6) permits a motion to dismiss if the complaint fails to state a claim upon which relief can be granted. A motion to dismiss focuses on the allegations in the complaint. The Court examines whether plaintiff alleges sufficient facts to that if taken as true, entitle him to relief. *See, e.g.*, *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief," "in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests[.]'" Fed. R. Civ. P. 8(a)(2); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *See Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

When reviewing the motion to dismiss under Rule 12(b)(6), a court must accept as true all factual allegations—but not legal conclusions. *See Iqbal*, 556 U.S. at 678. "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.*

**II. Eleventh Amendment Immunity (All Damages Claims in Official Capacities)**

First, defendants request dismissal of plaintiff's claims against them in their official capacities. *See* Dkt. 16, at 4.

The Eleventh Amendment bars a suit for damages against a state official in that person's official capacity. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989). However, a

1 | suit against a state official for prospective injunctive relief is not barred by this rule.  *See id.* at 71
2 | n.10.

3 | Thus, defendants are correct that plaintiff's suit against them in their official capacities for damages must be dismissed.  To the extent that defendants cite the Supreme Court's statement in *Pennhurst State School & Hospital. v. Halderman*, 465 U.S. 89, 101 (1984), the Court disagrees that this statement supports dismissal of plaintiff's claims for injunctive relief. *See* Dkt. 16, at 4.  The cited portion of *Pennhurst* holds that the Eleventh Amendment's jurisdictional bar to suits against state agencies or departments "applies regardless of the nature of the relief sought."  465 U.S. at 101.  But defendants ignore the very next page of *Pennhurst*, stating that there is "an important exception to this general rule" when a state official is sued and plaintiff seeks an "injunction that governs the official's future conduct[.]"  *Id.* at 102–03.

The Court does not understand plaintiff to be withdrawing any viable claims against defendants in their official capacities.  *See* Dkt. 19, at 5–6. Therefore, the Court recommends granting the motion to dismiss claims against defendants in their official capacities for damages. The dismissal should be with prejudice since amendment would be futile.  *See Lucas v. Dep't of Corr.*, 66 F.3d 245, 248 (9th Cir. 1995) ("Unless it is absolutely clear that no amendment can cure the defect . . . a pro se litigant is entitled to notice of the complaint's deficiencies and an opportunity to amend prior to dismissal of the action.").  However, claims against defendants in their official capacities for injunctive relief are not dismissed, except as otherwise set forth in the remainder of this Report and Recommendation.

**III.  All Claims Against Defendant Sinclair**

REPORT AND RECOMMENDATION - 5

Defendants argue that plaintiff has failed to state a claim against defendant DOC Secretary Sinclair, where there are no factual allegations regarding defendant Sinclair's participation. *See* Dkt. 16, at 8. The Court agrees.

To establish section 1983 liability for damages, a plaintiff must show the defendants, acting under color of state law, personally participated in the alleged deprivations of federal constitutional, or statutory rights. *Jones v. Williams*, 297 F.3d 930, 934 (9th Cir. 2002). More specifically, plaintiff must allege that defendants, through their own individual actions, violated those rights. *OSU Student Alliance v. Ray*, 699 F.3d 1053, 1069 (9th Cir. 2012).

Plaintiff has made no factual allegations tending to show how defendant Sinclair participated in the alleged constitutional deprivations at issue. *See also Colwell v. Bannister*, 763 F.3d 1060, 1070 (9th Cir. 2014) (explaining that a claim for injunctive relief against the State requires identifying a challenged law or policy that violates the Constitution and naming an official who can appropriate respond to injunctive relief).

Plaintiff's claims against defendant Sinclair should be dismissed. Plaintiff has not stated a viable claim against defendant Sinclair under § 1983 or any other law until plaintiff clearly explains defendant Sinclair's relationship to the alleged unlawful behavior, including whether defendant Sinclair has taken some action rendering him liable. Because amendment would not be futile, the Court recommends that the dismissal be with leave to amend.

**IV.  Claims under § 1983 in Individual Capacities**

Defendants argue that plaintiff's § 1983 claims against them in their individual capacities must be dismissed because qualified immunity shields them from liability. Specifically, defendants argue that even taking the allegations of the complaint as true, they did not violate plaintiff's constitutional rights. *See* Dkt. 16, at 7–8.

1        There are two parts to the qualified immunity analysis: first, whether the facts as alleged make out a violation of a constitutional right, and second, whether the right at issue was clearly established at the time of the alleged misconduct. *See Pearson v. Callahan*, 555 U.S. 223, 232 (2009). Defendants argue that the facts as alleged do not establish a violation of a constitutional right; therefore, the Court will address that issue only and analyzes plaintiff's various constitutional claims in turn.

### A. Due Process

Plaintiff alleges that his right to due process was violated, which the Court interprets as an argument that plaintiff suffered a deprivation of his right to procedural due process.

For procedural due process protections to apply, there must be a constitutionally protected interest at stake. *See Ingraham v. Wright*, 430 U.S. 651, 672–73 (1977). Once a plaintiff has established that a protected interest is at stake, the court's analysis turns to whether the inmate suffered a denial of adequate procedural protections. *See McQuillion v. Duncan*, 306 F.3d 895, 900 (9th Cir. 2002).

A constitutionally protected liberty interest can arise from state law, including prison policies. *See Chappell v. Mandeville*, 706 F.3d 1052, 1063 (9th Cir. 2013). In the prison context—

> [such an interest] will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.

*Sandin v. Conner*, 515 U.S. 472, 484 (1995); *see Wilkinson v. Austin*, 545 U.S. 209, 223 (2005) ("After *Sandin*, it is clear that the touchstone of the inquiry into the existence of a protected, state-created liberty interest in avoiding restrictive conditions of confinement is not the language

1  of regulations regarding those conditions but the nature of those conditions themselves 'in
2  relation to the ordinary incidents of prison life.'") (quoting *Sandin*, 515 U.S. at 484).

3  Plaintiff alleges that defendants violated DOC policy 420.311 by extending his dry cell
4  watch because such an extension must be authorized by the superintendent with the concurrence
5  of a deputy director. Dkt. 4, at 6. Plaintiff alleges that neither defendant Hanratty nor Reining
6  was such a person. Dkt. 4, at 6. Thus, the Court must determine whether the 101-hour dry cell
7  watch imposed "[an] atypical and significant hardship on the inmate in relation to the ordinary
8  incidents of prison life." *Chappell*, 706 F.3d at 1064 (internal citation and quotation omitted).

9  Three factors apply in determining whether an atypical and significant hardship exists:
10 (1) whether the conditions "mirrored those conditions imposed . . . in analogous *discretionary*
11 confinement settings, namely administrative segregation and protective custody;" (2) the
12 duration and intensity of the conditions; and (3) whether the change in confinement would
13 "inevitably affect the duration of [the prisoner's] sentence." *Id.* (citation omitted).

14 Based on solely the pleadings submitted so far, the Court is unable to make a
15 determination regarding the first and second factor. "Rather than invoking a single standard for
16 determining whether a prison hardship is atypical and significant," a court applies the *Sandin*
17 factors in a "case by case, fact by fact consideration." *Serrano v. Francis*, 345 F.3d 1071, 1078
18 (9th Cir.2003). The first factor is particularly fact-sensitive. It "requires a factual comparison
19 between conditions in general population or administrative segregation (whichever is applicable)
20 and [the challenged condition], examining the hardship caused by the prisoner's challenged
21 action in relation to the basic conditions of life as a prisoner." *Jackson v. Carey*, 353 F.3d 750,
22 755 (9th Cir. 2003). But with no factual development of the record in this regard, the Court
23 cannot perform the necessary comparative analysis required by the first factor.

24

1  Further, the Court notes that defendants do not address whether there is a constitutionally
2  protected liberty interest at issue, using the test set forth above. *See* Dkt. 16, at 1. Instead,
3  defendants argue that (1) the State has an interest in maintaining internal security and (2)
4  defendant Reining believed that plaintiff was still concealing contraband after the initial 72-hour
5  period expired. *See* Dkt. 16, at 7. Whether the State has an interest in maintaining internal
6  security is not dispositive of the question of whether procedural due process applied to the
7  procedures related to a dry cell watch and whether defendants violated any procedural due
8  process guarantees. Moreover, the Court must take as true plaintiff's well-pleaded allegations,
9  which include that defendants Reining and Hanratty violated the dry cell watch policy by
10 extending the watch period without following appropriate procedures. Finally, defendants do not
11 cite any cases concluding that a dry cell watch for 101 hours cannot, as a matter of law, amount
12 to an atypical and significant hardship. Nor is the Court aware of any such law. *See Price v.*
13 *Sutton*, No. 119CV00717DADGSAPC, 2020 WL 4922502, at *5 (E.D. Cal. Aug. 21, 2020)
14 (cataloging district court rulings).
15 In short, the Court finds that defendants fail to show that plaintiff's procedural due
16 process claims against defendants in their individual capacities should be dismissed at this stage.
17 **B. Equal Protection**
18 Plaintiff alleges that defendants' actions violated his right to Equal Protection. *See* Dkt.
19 4, at 10. Plaintiff does not explain his theory of an Equal Protection violation. Dkt. 4, at 10.
20 "The Equal Protection Clause of the Fourteenth Amendment commands that no State
21 shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is
22 essentially a direction that all persons similarly situated should be treated alike." *City of*
23 *Cleburne v. Cleburne Living Center*, 473 U.S. 432, 439 (1985) (quoting *Plyler v. Doe*, 457 U.S.
24

202, 216 (1982)). "To state a claim under 42 U.S.C. § 1983 for a violation of the Equal Protection Clause of the Fourteenth Amendment a plaintiff must show that the defendants acted with an intent or purpose to discriminate against the plaintiff based upon membership in a protected class." *Furnace v. Sullivan*, 705 F.3d 1021, 1030 (9th Cir. 2013) (quotation marks and citation omitted).

Plaintiff does not explain how he was discriminated against based upon membership in a protected class. Nor does he explain how he was treated differently from others similarly situated. Therefore, his claim for violation of Equal Protection should be dismissed. However, the Court finds that plaintiff could cure the above-noted deficiencies by amendment and therefore recommends dismissal of the Equal Protection claim with leave to amend.

### C. Cruel and Unusual Punishment

Plaintiff asserts that the dry cell watch, including the 24-hour extension, constituted cruel and unusual punishment. Dkt. 4, at 10.

The treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment. *See Helling v. McKinney*, 509 U.S. 25, 31 (1993). Prisoners must be provided with the basic necessities of life such as food, clothing, shelter, sanitation, medical care, and personal safety. *See Farmer v. Brennan*, 511 U.S. 825, 832 (1994). A prison official violates the Eighth Amendment when two requirements are met: (1) the deprivation alleged must be, objectively, sufficiently serious. *Id.* at 834. And (2) the prison official must possess a sufficiently culpable state of mind. *Id.*

The first requirement to establish an Eighth Amendment claim is dispositive of plaintiff's Eighth Amendment claim. Plaintiff alleges that he was strip searched; required to provide a urine sample and to put on a thick suit with no underclothing or socks; bound with zip ties and

tape; and placed into a holding cell with a flat mattress with one blanket and no toilet or sink access. Dkt. 4, at 5. Plaintiff states that he had to wait for personnel to be present before urinating or defecating; that he had to urinate in a bottle; that he had to defecate in a bucket and was unable to properly clean himself; and that the lights were on all night. Dkt. 4, at 5. He was allegedly subjected to these conditions for nearly 101 hours (more than four days). *See* Dkt. 4, at 7.

However, these circumstances, standing alone, are not adequate to amount to an Eighth Amendment violation. For instance, in *Centeno v. Wilson*, the Eastern District of California concluded that plaintiff had not shown an Eighth Amendment violation when he was placed on contraband watch and forced to sleep on a cold floor without a mattress, blanket, or the ability to shower for seven days. No. 1:08-CV-1435-FJM, 2011 WL 836747, at *3 (E.D. Cal. Mar. 4, 2011), *aff'd*, 479 F. App'x 101 (9th Cir. 2012). As here, that plaintiff was kept under surveillance and in restraints and was forced to defecate in a container. *Id.* at *1. Other courts have reached similar conclusions. *See, e.g.*, *Diaz v. Cate*, No. C 11-3459 CRB (PR), 2013 WL 4479262, at *3–*4 (N.D. Cal. Aug. 20, 2013) (ruling that five-day confinement in a dry cell with a portable toilet and buckets for defecating did not violate the Eighth Amendment, even though plaintiff was restrained, not allowed to shower, and was forced to eat and sleep on the floor without a blanket); *Frye v. Oleshea*, No. C 08-5288 CW, 2012 WL 951318, at *1, *6 (N.D. Cal. Mar. 20, 2012) (ruling that placing a nearly-naked prisoner in leg restraints and confining him for nearly two days in a dirty cell with no toilet access, a bucket to relieve himself, constant lighting, and no toilet paper or soap and water did not violate the Eighth Amendment). *But see Harris v. Lappin*, No. EDCV 06-0664VBF(AJW), 2009 WL 789756, at *10 (C.D. Cal. Mar. 19,

1  2009) (finding a viable Eighth Amendment claim for 11-day dry cell confinement in filthy floor
2  covered with other inmates' waste and bodily fluids).
3        The Court finds that the allegations in plaintiff's complaint regarding his conditions of
4  confinement in the dry cell do not currently rise to the level of an Eighth Amendment violation.
5  Prison officials must have the discretion to impose necessary restrictions to prevent smuggling
6  contraband, even though it results in the prisoner undergoing these difficult conditions.
7  Moreover, to the extent that plaintiff relies on the alleged violation of prison policy, an alleged
8  violation of state law does not, standing alone, provide a basis for an independent cause of action
9  under section 1983.  *See Galen v. Cty. of Los Angeles*, 477 F.3d 652, 662 (9th Cir. 2007).
10       The Court is aware of at least some authority that prison officials cannot impose
11 conditions for the purpose of retribution or retaliation.  *E.g. Hignite v. Felker*, No.
12 CIVS070732GEBDAD P, 2008 WL 2782854, at *8 (E.D. Cal. July 14, 2008), *report and*
13 *recommendation adopted*, No. 2:07-CV-0732-GEBDADP, 2008 WL 3974369 (E.D. Cal. Aug.
14 22, 2008) (plausible Eighth Amendment violation where there was no reasonable cause for dry
15 cell watch and conditions imposed were far in excess of written policy); *accord Buckley v.*
16 *Alameida*, No. 1:04-CV-05688-LJO, 2012 WL 6570430, at *9 (E.D. Cal. Dec. 17, 2012), *report*
17 *and recommendation adopted*, No. 1:04-CV-05688-LJO, 2013 WL 314079 (E.D. Cal. Jan. 25,
18 2013) (noting Ninth Circuit dicta that "it may be possible for a contraband search to fall under
19 the constitutional protections of the Eighth Amendment '[i]f the search were conducted for
20 purposes unrelated to security considerations.'").
21       Nonetheless, here, plaintiff's allegations regarding the 101-hour dry cell watch do not go
22 beyond those circumstances that as a matter of law, do not violate the Eighth Amendment.  The
23 claim of cruel and unusual punishment should be dismissed.  However, the dismissal should
24

1  again be with leave to amend since it is not clear that there is no set of facts under which plaintiff

2  would be able to viably allege this claim.

3  **D. Unlawful Search and Seizure**

4  Plaintiff asserts that his Fourth Amendment rights were violated by the strip search and

5  dry cell watch. *See* Dkt. 4, at 9.

6  Prisoners do not possess "the full range of freedoms of an unincarcerated individual."

7  *Bell v. Wolfish*, 441 U.S. 520, 546 (1979). "The applicability of the Fourth Amendment turns on

8  whether the person invoking its protection can claim a 'justifiable,' a 'reasonable,' or a

9  'legitimate expectation of privacy' that has been invaded by government action." *Hudson v.*

10 *Palmer*, 468 U.S. 517, 525 (1984) (quotation omitted). "A right of privacy in traditional Fourth

11 Amendment terms is fundamentally incompatible with the close and continual surveillance of

12 inmates and their cells required to ensure institutional security and internal order." *Id.* at 527–28.

13 Furthermore, any restriction on a prisoner's privacy interests is justified to the extent that it is

14 "reasonably related to legitimate penological interests." *See Turner v. Safley*, 482 U.S. 78, 89

15 (1987).

16 **1. Strip Search**

17 Generally, strip searches do not violate the Fourth Amendment rights of prisoners. *See*

18 *Michenfelder v. Sumner*, 860 F.2d 328, 332–33 (9th Cir. 1988). Strip searches that are

19 "excessive, vindictive, harassing, or unrelated to any legitimate penological interest," however,

20 may be unconstitutional. *Id*. at 332.

21 Again, although plaintiff denies the truth of the charges against him, he does not allege

22 that defendants lacked a reasonable suspicion that he was smuggling contraband into the prison.

23 Plaintiff's complaint is, indeed, silent as to the reason that he was suspected of smuggling

24

1 | contraband into the prison. Thus, he does not plausibly allege that the strip search was
2 | excessive, vindictive, harassing, or unrelated to a legitimate penological purpose.
3 |     In *Nunez v. Duncan*, the Ninth Circuit explained that a prisoner's strip search for
4 | contraband does not violate the Fourth Amendment. *See* 591 F.3d 1217, 1227–28 (2010). The
5 | Court concluded that (1) controlling contraband within a prison is a legitimate penological
6 | interest and (2) a prison regulation allowing visual searches was reasonably related to that
7 | interest. *Id.* at 1228. Moreover, even if an official targeted a prisoner for a search for a non-
8 | penological reason, so long as the objective circumstances justified the search, the search did not
9 | violate the Fourth Amendment. *Id.* Under *Nunez*, plaintiff's claim regarding the strip search is
10 | not viable under the Fourth Amendment should be dismissed. Because under certain
11 | circumstances, a strip search of a prisoner may violate the Fourth Amendment, the dismissal
12 | should be with leave to amend. *See id.* at 1227–28.

### 2. Dry Cell Watch

14 |     A federally recognized liberty interest to be free from unreasonable seizures exists under
15 | the Fourth Amendment. *See United States v. Sharpe*, 470 U.S. 675, 682 (1985) (the Fourth
16 | Amendment does "not . . . guarantee against all . . . seizures, but only against unreasonable . . .
17 | seizures"). Thus, even assuming that the regulations allowing dry cell watches infringe on a
18 | constitutionally protected liberty interest in being free from dry cell watches (an issue not
19 | address by defendants in the motion to dismiss), plaintiff must show that this "seizure" was
20 | unreasonable. *See Turner*, 482 U.S. at 89 (setting forth factors to be considered as appropriate).
21 |     Again, however, under the facts as alleged in the complaint, the detention of plaintiff for
22 | 101 hours in a dry cell was reasonably related to the legitimate penological purpose of finding
23 | concealed contraband. *Accord Buckley v. Alameida*, No. 1:04-CV-05688-OWW, 2011 WL
24 |

7139570, at \*22 (E.D. Cal. Dec. 20, 2011), *report and recommendation adopted*, No. 1:04-CV-05688-LJO, 2012 WL 368280 (E.D. Cal. Feb. 1, 2012) ("A contraband watch which entails: 1) restricting the inmate to only having a pair of boxer shorts, a t-shirt and shower shoes; 2) restraining the inmate in waist chains, handcuffs, and leg irons; 3) as well as placing the inmate in a cell with no running water, mattress, blanket, cleaning supplies serves the valid legitimate reason of ensuring security in the prison."). Plaintiff asserts that defendants did not follow protocol in extending his dry cell watch, but he does not assert that defendants lacked reasonable suspicion that he was concealing contraband at any time. *See* Dkt. 4, at 6; *accord Bartholomew v. Sisto*, No. CIV S-09-0882-JAM, 2012 WL 691708, at \*5 (E.D. Cal. Mar. 2, 2012), *report and recommendation adopted*, No. CIV S-09-0882-JAM, 2012 WL 1413959 (E.D. Cal. Apr. 20, 2012) *(*finding legitimate penological justification supported constitutionality of dry cell watch despite Fourth and Eighth Amendment challenges and even where no contraband was ultimately found).

Nor does it appear that there would be a ready alternative to confinement that would accommodate the prison's interest in intercepting contraband, under the facts as alleged. *See Turner*, 482 U.S. at 89 (including the availability of ready alternatives as a factor to be considered when assessing a challenged prison action). At least one other judge has observed that a contraband watch is a far less drastic alternative than a body cavity search or exploratory surgery. *Buckley*, 2011 WL 7139570, at \*21.

In short, the facts as alleged in the complaint fail to show that the 101-hour dry cell watch was not reasonably related to the legitimate penological purpose of discovery suspected contraband. Again, however, dismissal should be with leave to amend.

**V. Claims not Arising under § 1983**

Plaintiff alleges that defendants falsely imprisoned him and unlawfully restrained him. Dkt. 4, at 12. These claims arise under state law, not § 1983. Defendants do not separately address plaintiff's state law claims, instead arguing that plaintiff has failed to show violation of his "constitutional rights." Dkt. 16, at 8.

Similarly, plaintiff alleges conspiracy to deprive him of his civil rights, a claim arising under 42 U.S.C. § 1985, not § 1983. Defendants do not separately address the viability of such a claim in their motion to dismiss, either.

Thus, the Court does not address whether plaintiff's § 1985 and state law claims are viable, except as otherwise noted in the Report and Recommendation.

## VI. Request for Additional Time to Amend

In response to the motion to dismiss, plaintiff requests additional time to amend his complaint since he is awaiting transfer to another institution and does not have law library access. Dkt. 19, at 4. The Court recommends that plaintiff be given 30 days from the date of the Order on this Report and Recommendation to amend his complaint. Plaintiff may move for leave to amend, if he is unable to meet this timeline and has good cause for being granted additional time.

## VII. Summary

For the reasons set forth above, the Court recommends the following disposition of plaintiff's claims:

(1) All claims against defendant Sinclair should be dismissed with leave to amend;

(2) all claims against defendants in their official capacities for damages should be dismissed with prejudice;

      (3) all claims against defendants Hanratty and Reining in their individual capacities should be dismissed with leave to amend, **except that** the following claims should **not** be dismissed—

      (a) claims against defendants Hanratty and Reining under § 1983 for violating plaintiff's right to procedural due process; and

      (b) claims against defendants Hanratty and Reining under § 1985 and state law, which defendants do not specifically argue should be dismissed.

## CONCLUSION

For the reasons set forth above, the Court recommends granting the motion to dismiss (Dkt. 16) in part and denying it in part, as outlined above. *Supra*, part VII. Plaintiff should be given 30 days to file an amended complaint; he may not renew claims that have been dismissed unless they were dismissed "with leave to amend."

Pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), the parties shall have fourteen (14) days from service of this Report to file written objections. *See also* Fed. R. Civ. P. 6. Failure to file objections will result in a waiver of those objections for purposes of *de novo* review by the district judge, *see* 28 U.S.C. § 636(b)(1)(C), and can result in a result in a waiver of those objections for purposes of appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Miranda v. Anchondo*, 684 F.3d 844, 848 (9th Cir. 2012) (citations omitted). Accommodating the time limit imposed by Rule 72(b), the Clerk is directed to set the matter for consideration on **January 29, 2021,** as noted in the caption.

Dated this 13th day of January, 2021.

                                                  J. Richard Creatura
                                                  United States Magistrate Judge