UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

KAFOA MO-TALAU HEFA,

    Plaintiff,

v.

MICHAEL HANRATTY, *et al.*,

    Defendants.

CASE NO. 3:20-cv-05475-JCC-JRC

REPORT AND RECOMMENDATION

NOTED FOR: February 18, 2022

    The District Court has referred this 42 U.S.C. § 1983 civil rights action to Chief United States Magistrate Judge J. Richard Creatura pursuant to 28 U.S.C. § 636(b)(1)(A) and (B), and local Magistrate Judge Rules MJR1, MJR3 and MJR4.

    Plaintiff, Kafoa Mo-Talau Hefa, is currently incarcerated at Coyote Ridge Correctional Center ("CRCC") and alleges that defendants Michael Hanratty and Arin Reining conspired to—and did—violate his procedural due process regarding his confinement pursuant to an investigatory contraband watch, referred to as a "dry cell watch." After suspecting plaintiff was smuggling contraband into the facility, CRCC officials decided to confine plaintiff to a dry cell

REPORT AND RECOMMENDATION - 1

watch for 84 hours or three normal bowel movements, whichever occurred first. This type of confinement is intrusive because its purpose is to monitor and inspect a prisoner's bowel movements for the presence of narcotics. However, courts have consistently held that this type of confinement is constitutional, and plaintiff does not argue otherwise. Instead, plaintiff alleges that his due process rights were violated when defendants extended the dry cell watch by 24 hours after he produced the required bowel movements within the initial period, and that defendant Hanratty was not the appropriate official to approve the extension.

Defendants moved for summary judgment on plaintiff's claims and argue that they are entitled to qualified immunity as to plaintiff's federal law claims and that plaintiff has waived any state law claims. Having reviewed defendants' motion for summary judgment and the relevant record, the Court concludes that plaintiff has expressly waived his state law claims and that defendants are entitled to qualified immunity as to plaintiff's § 1983 claim because, even if plaintiff had a liberty interest in not being confined to the dry cell watch for an additional 24 hours, the law was not clearly established at the time so as to have given defendants fair notice that they were violating a constitutional right.

Furthermore, because plaintiff has not rebutted defendants' showing that defendant Reining was not involved in the dry cell watch extension and because a viable § 1983 claim is required to allege a § 1985 conspiracy claim, the Court concludes that plaintiff has failed to state a § 1985 claim. Therefore, the Court recommends that defendants' motion for summary judgment be granted and plaintiff's remaining claims be dismissed with prejudice.

**BACKGROUND**

This action arises out of plaintiff's confinement to a dry cell watch while housed at CRCC. Dkt. 4 at 2. According to defendants, throughout 2018 and 2019, Internal Investigations

Unit ("IIU") Chief Investigator Jeffrey Kinne received information from several confidential informants that plaintiff was smuggling contraband into CRCC through his extended family visits. Dkts. 30-2 at 4). Based on that information, Mr. Kinne directed defendant Reining to interview plaintiff after his next extended family visit. Dkt. 30-2 at 4. After plaintiff finished an extended family visit from September 6 through September 8, 2019, prison officers strip searched plaintiff for contraband, but none was found. Dkt. 4 at 5. Defendant Reining then interviewed plaintiff and questioned him about smuggling narcotics. Dkt. 4 at 4. Plaintiff denied the accusations and he alleges that defendant Reining said that she would "get" him and that his wife would not be able to see him again. *Id.*

Defendant Reining reported the interview to Mr. Kinne who then recommended that plaintiff be placed on dry cell watch. Dkt. 30-2 at 5. Defendant Hanratty signed the dry cell watch authorization form on behalf of Superintendent Uttecht because Mr. Uttecht was not available and authorized him to sign on his behalf. Dkt. 33 at 16. Defendant Hanratty supervised plaintiff's dry cell watch, which began at 11:35 a.m. Dkt. 30-4 at 3. Plaintiff was provided a copy of the dry cell watch authorization form, which provided him an opportunity to respond and request a review of the placement, but he declined to do so. *Id.* at 4.

The dry cell watch placement procedure is outlined in DOC Policy 420.311. It states that a prisoner will be "clothed in a pair of specially designed coveralls" and that he will be handcuffed and his "pant legs will be tightly taped, allowing for circulation, so contraband will not be lost by excreting it down the pant leg." Dkt. 30-3 at 4–5. The cell in which a prisoner is placed will have all windows closed and locked and will only have a mattress and a pillow as furniture. *Id.* at 5. The cell will not have running water during the procedure and the "toilet bowl

will be covered, flushed, and taped." *Id.* The dry cell watch is documented via a logbook. *Id.* at 10. Plaintiff's description of his conditions generally aligns with this process.

According to plaintiff, he was made to wear a "thick full body coverall suit with no underclothing or socks." Dkt. 4 at 5. His ankles and wrists were bound with zip ties and tape and zippers were secured with small locks. *Id.* He was placed in a cell with a "worn-out flat mattress, pillow, no bedding sheets, and one thin blanket on the floor." *Id.* The toilet and sink were "masked and turned off." *Id.* He claims he had to wait long periods of time to urinate or defecate because "3 guards had to be present for urination and a shift Sergeant for bowl movements." *Id.* He claims that whenever bowel movements occurred, his "belly chain cuffs were applied and [he] had to defecate in a bucket that had plastic lining to catch his stool." *Id.* Finally, he claims that he barely slept because the bright lights were on all night. *Id.*

According to DOC Policy 420.311, "[a] dry cell watch must be concluded within 84 hours or after the equivalent of 3 consecutive normal bowel movements, which ever occurs first," unless the prisoner has not had three consecutive normal bowel movements within the 84-hour period. Dkt. 30-3 at 11. Written authorization for a 24-hour extension must be obtained from the "Superintendent or designee with the rank of Captain or above." *Id.*

The parties agree that plaintiff produced a bowel movement on September 9, 2019 that did not meet the minimum size requirements to be considered a "normal" bowel movement pursuant to DOC Policy 420.311. Dkt. 30-4 at 4. As a result, there is no dispute that plaintiff's first "normal" bowel movement occurred on September 10, 2019 at 9:17 a.m. *Id.* The second normal bowel movement, however, is disputed. According to plaintiff, he produced his second "normal" bowel movement on September 11, 2019 at 8:00 a.m. Dkts. 4 at 6, 32 at 2. According to defendants, plaintiff was using the urinal during that time and that he did not produce a bowel

1   movement. Dkt. 33 at 15. Both sides rely on the logbook of the dry cell watch, which states that
2   between 7:29 a.m. to 8:00 a.m., plaintiff was using the "toilet/urinal." Dkt. 30-4 at 22, 31-1.
3         The rest of plaintiff's bowel movements are undisputed. Plaintiff produced another bowel
4   movement on September 11, 2019 at 3:25 p.m. *Id.* After this bowel movement, defendant
5   Hanratty notified Mr. Uttecht about plaintiff's bowel movements and inquired whether the dry
6   cell watch should be concluded. Dkt. 30-4 at 4.
7         According to defendants, Mr. Kinne recommended an extension of the dry cell watch
8   because plaintiff had not produced three consecutive normal bowel movements. Dkt. 30-2 at 5.
9   Mr. Uttecht authorized the extension and directed defendant Hanratty to sign the extension form
10  on his behalf. *Id.* Plaintiff had a final bowel movement on September 12, 2019 at 7:14 a.m. *Id.*
11  None of the bowel movements tested positive for narcotics and plaintiff was released from the
12  dry cell watch on September 12, 2019 at 4:30 p.m. *Id.*
13        In June 2020, plaintiff filed a complaint in this Court alleging that the dry cell watch's
14  extension subjected him to cruel and unusual punishment, false imprisonment, unlawful restraint,
15  unlawful search and seizure, violations of his constitutional rights to due process and equal
16  protection, and conspiracy to deprive him of constitutional rights. Dkt. 4 at 4. He named Michael
17  Hanratty, Arin Reining, and Stephen Sinclair as defendants. *Id.* at 3. On November 20, 2020, all
18  defendants moved to dismiss plaintiff's claims. *See* Dkt. 16.
19        On January 13, 2021, this Court issued a Report and Recommendation dismissing all
20  claims against defendant Sinclair without prejudice, dismissing claims against defendants in their
21  official capacities for damages with prejudice, and dismissing all claims against defendants
22  without prejudice except for plaintiff's § 1983 procedural due process claim, § 1985 claim, and
23  state law claims. *See* Dkt. 22 at 16–17. On March 15, 2021, the District Court adopted the Report
24

and Recommendation and gave plaintiff 21 days to amend his complaint as to the claims that were dismissed with leave to amend. *See* Dkt. 24 at 2. The District Court informed plaintiff that if he failed to amend his complaint, "the case will proceed with only his state law claims, his § 1985 claims, and his § 1983 procedural due process claims against Defendants Hanratty and Reining in their individual capacities." *Id.* Plaintiff did not amend his complaint. Therefore, plaintiff's only remaining claims are his state law claims, his § 1985 claims, and his § 1983 procedural due process claims against defendants Hanratty and Reining in their individual capacities.

On November 22, 2021, defendants moved for summary judgment on plaintiff's remaining claims. Dkt. 30. Defendants served plaintiff with a notice informing him that there was a motion for summary judgment filed in his case and that he must come forward with evidence supporting his claims. *See* Dkt. 30-6. Plaintiff filed a response and defendants filed a reply. *See* Dkts. 31, 33.

## DISCUSSION

### I.     Legal Standard

Summary judgment is appropriate if a moving party shows that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The materiality of a given fact is determined by the required elements of the substantive law under which the claims are brought. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Factual disputes that do not affect the outcome of the suit under the governing law will not be considered. *Id.*

Where there is a complete failure of proof concerning an essential element of the nonmoving party's case on which the nonmoving party has the burden of proof, all other facts

1 are rendered immaterial, and the moving party is entitled to judgment as a matter of law. *Celotex*
2 *Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Anderson*, 477 U.S. at 254 ("the judge must view the
3 evidence presented through the prism of the substantive evidentiary burden"). However, when
4 presented with a motion for summary judgment, the court shall review the pleadings and
5 evidence in the light most favorable to the nonmoving party, *Anderson*, 477 U.S. at 255 (citation
6 omitted), and "a pro se complaint will be liberally construed . . . ." *Pena v. Gardner*, 976 F.2d
7 469, 471 (9th Cir. 1992) (citing *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)) (other citation
8 omitted).

9 Once the moving party has carried its burden under Fed. R. Civ. P. 56, the party opposing
10 the motion "must do more than simply show that there is some metaphysical doubt as to the
11 material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 586 (1986). The
12 opposing party cannot rest solely on his pleadings but must produce significant, probative
13 evidence in the form of affidavits, and/or admissible discovery material that would allow a
14 reasonable jury to find in his favor. *Id.* at n.11; *Anderson*, 477 U.S. at 249–50. However,
15 weighing of evidence and drawing legitimate inferences from facts are jury functions, and not
16 the function of the court. *See United Steel Workers of Am. v. Phelps Dodge Corps.*, 865 F.2d
17 1539, 1542 (9th Cir. 1989).

18 Because plaintiff is *pro se*, the Court will consider all of plaintiff's contentions offered in
19 verified pleadings, where such contentions are based on personal knowledge and set forth facts
20 that would be admissible in evidence, and where plaintiff attested under penalty of perjury that
21 the contents of the verified pleadings are true and correct. *See Jones v. Blanas*, 393 F.3d 918, 923
22 (9th Cir. 2004). However, to the extent that plaintiff relies on conclusory statements,
23 unsupported conjecture, and allegations based merely on belief, such are insufficient to create a
24

genuine, material issue of fact. *See Hernandez v. Spacelabs Med. Inc.*, 343 F.3d 1107, 1112 (9th Cir. 2003).

### I. Defendants' Evidentiary Objections

In their reply, defendants object to several portions of plaintiff's declaration in support of his opposition to summary judgment because they are conclusory and not based on personal knowledge. *See* Dkt. 33 at 2–5. Defendants' objections concern plaintiff's statements regarding several documents created by defendants or containing defendants' statements. *Id.* However, "[a]t the summary judgment stage, we do not focus on the admissibility of the evidence's form. We instead focus on the admissibility of its contents." *Fraser v. Goodale*, 342 F.3d 1032, 1036 (9th Cir. 2003); *see* Fed. R. Civ. P. 56(c)(2). If the contents of a document can be presented in a form that would be admissible at trial—for example, through live testimony by the author of the document—the mere fact that the document itself might be excludable provides no basis for refusing to consider it on summary judgment. *Fraser*, 342 F.3d at 1036–37.

Here, plaintiff may have been able to introduce the contents of the documents at trial by calling as witnesses individuals with personal knowledge of the contents, and some of the content would likely have been admissible as an opposing party statement. Therefore, defendants' objections are overruled.

### II. State Law Claims

Plaintiff alleged that defendants falsely imprisoned him and unlawfully restrained him, which, although he cited to § 1983, the Court construed as state law claims. *See* Dkts. 4 at 12, 22 at 16. Defendants argue that plaintiff has expressly abandoned these claims. Dkts. 30 at 3–4, 20. Defendants provided a deposition transcript in which plaintiff stated that he is not making any state law claims. Dkt. 30-1 at 6:22–25, 7:1–4. Plaintiff did not address this argument or mention

1  any state law claims in his response, which the Court considers an admission that he is
2  abandoning these claims. Therefore, the Court recommends that defendants' motion for
3  summary judgment regarding plaintiff's state law claims be granted.

4      **III.**    **§ 1983 Procedural Due Process Claim**

5      Defendants argue that they are entitled to qualified immunity on plaintiff's §1983 due
6  process claim. The qualified immunity analysis consists of two parts: first, whether the facts as
7  alleged make out a violation of a constitutional right; and second, whether the right at issue was
8  clearly established at the time of the alleged misconduct. *See Pearson v. Callahan*, 555 U.S. 223,
9  232 (2009).

10      Plaintiff alleges that his right to due process was violated when defendants extended his
11  dry cell watch by 24 hours even though he had produced three normal bowel movements, and
12  that the extension was improperly approved by defendant Hanratty. Dkt. 4 at 8. For plaintiff to
13  be entitled to due process he must establish a liberty interest that triggers procedural protections.
14  "A liberty interest can arise from one of two sources—either the Due Process Clause of the
15  Fourteenth Amendment or state law." *Chappell v. Mandeville*, 706 F.3d 1052, 1063 (9th Cir.
16  2013) (citing *Mendoza v. Blodgett*, 960 F.2d 1425, 1428 (9th Cir. 1992)).

17      According to the Ninth Circuit, "[o]nly the most extreme changes in the conditions of
18  confinement have been found to directly invoke the protections of the Due Process Clause." *Id.*
19  Those changes include an involuntary commitment to a mental institution or the forced
20  administration of psychotropic drugs. *Id.* Because a dry cell watch does not rise to that level, the
21  Due Process Clause does not provide the type of liberty interest plaintiff has alleged. *See Id.* at
22  1062–63 (holding that an investigative contraband watch for six days did not rise to the level
23  required by the Fourteenth Amendment to establish a liberty interest).
24

REPORT AND RECOMMENDATION - 9

1       A constitutionally protected liberty interest can also arise from state law, including prison

2 policies. *See Chappell*, 706 F.3d at 1063. In the prison context—

> [such an interest] will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.

*Sandin v. Conner*, 515 U.S. 472, 484 (1995) (internal citations omitted).

Here, plaintiff only challenges the 24-hour extension—not the initial dry cell watch. Dkt. 4. Therefore, the question is whether adding 24 hours to the dry cell watch, for a total of 101 hours transformed the confinement into an atypical and significant hardship in relation to the ordinary incidents of prison life. *See Sandin*, 515 U.S. at 484. That is because the Supreme Court has made clear that the conditions of confinement rather than the language of the regulations are determinative of a state-created interest violation. *See Wilkinson v. Auston*, 545 U.S. 209, 223 (2005) ("After Sandin, it is clear that the touchstone of the inquiry into the existence of a protected, state-created liberty interest in avoiding restrictive conditions of confinement is not the language of regulations regarding those conditions but the nature of those conditions themselves 'in relation to the ordinary incidents of prison life.'") (quoting *Sandin*, 515 U.S. at 484). In making that determination, courts consider the following three factors:

> (1) whether the conditions of confinement "mirrored those conditions imposed upon inmates in analogous *discretionary* confinement settings, namely administrative segregation and protective custody[;]" (2) the duration and intensity of the conditions of confinement; and (3) whether the change in confinement would "inevitably affect the duration of [the prisoner's] sentence."

*Id.* (citation omitted).

An investigative contraband watch, such as a dry cell watch, is the type of condition of confinement that is ordinarily contemplated in prison life. *See Chappell*, 706 F.3d at 1063.

REPORT AND RECOMMENDATION - 10

1  According to defendants, the dry cell watch is analogous to administrative segregation or
2  protective custody other than those changes required for the purpose of the dry cell watch, such
3  as not using running water and limiting items to prevent the disposal of contraband. Dkt. 30 at 5.
4  Plaintiff does not address this issue in his response, but the Court notes that plaintiff did not
5  challenge the conditions of the initial dry cell watch.
6        Although the duration of confinement can make conditions atypical and a significant
7  hardship, *see Harris v. Lappin*, 2009 WL 789756 *10–12 (C.D. Cal. 2009) (holding that
8  confinement to dry cell watch for eleven days was sufficient to state a viable claim), it does not
9  appear that the extension, which resulted in a total confinement of 101 hours—or just over four
10 days—did so in this context. *See Chappell*, 706 F.3d at 1065 (declining to hold that an
11 investigatory contraband watch for six days implicated a state created liberty interest); *Meraz v.*
12 *Reppond*, 2009 WL 723841 *2 (N.D. Cal. 2009) (holding that, although the conditions were
13 harsh, the dry cell watch for three days was simply too brief to implicate the due process clause).
14       However, even if plaintiff had a state created liberty interest related to the extension of
15 his dry cell watch, defendants would still be entitled to qualified immunity because the law was
16 not clearly established to have given defendants fair notice that they were violating a
17 constitutional right. It is plaintiff's burden to show that the law was clearly established at the
18 time of his dry cell watch. *See Maraziti v. First Interstate Bank*, 953 F.2d 520, 523 (9th Cir.
19 1992). Plaintiff has not identified a case—and the Court is not aware of any—which found
20 similar circumstances unconstitutional. In fact, in *Chappell*, which involved a confinement of six
21 days, the Ninth Circuit held that a reasonable official would not have known that such conditions
22 would violate a constitutional right. *See Chappell*, 706 F.3d at 1065. Here, a reasonable official
23 would not have known that extending a dry cell watch for 24 hours, for a total of 101 hours,
24

would violate a constitutional right. Therefore, defendants are entitled to judgment as a matter of law regarding their qualified immunity defense as to plaintiff's § 1983 due process claims.

**IV.     § 1985 Conspiracy Claim**

"Section 1985 proscribes conspiracies to interfere with civil rights." *Sanchez v. City of Santa Ana*, 936 F.2d 1027, 1039 (9th Cir. 1990). The relevant portion of that section here is the first clause of § 1985(3), which concerns conspiracies to deprive a person of equal protection of the laws. 42 U.S.C. § 1985(3). To state a violation of § 1985(3), plaintiff must prove the following elements:

> (1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of ay right or privilege of a citizen of the United States.

*Fazaga v. Federal Bureau of Investigation*, 965 F.3d 1015, 1059 (9th Cir. 2020) (citing *United Bhd. of Carpenters & Joiners of Am., Local 610 v. Scott*, 463 U.S. 825, 828–29 (1983)).

Here, plaintiff alleged that defendants Reining and Hanratty conspired "to further detain [plaintiff] under the 24 hour Dry Cell Search/Watch extension." Dkt. 4 at 14. Defendants argue that there is no evidence that they conspired together to violate plaintiff's constitutional rights because defendant Reining was not involved in plaintiff's dry cell watch placement or extension. Dkt. 30 at 19. To support their position, defendants provide declarations stating that defendant Hanratty signed the extension on behalf of Mr. Uttech after he consulted with Mr. Kinne from IIU and Mr. Uttech. Dkts. 30-4 at 4, 30-2 at 5. Defendant Reining also provided a declaration stating that she "did not supervise or observe [plaintiff]'s dry cell watch." Dkt. 30-5 at 4.

According to plaintiff, after he produced three bowel movements, defendant Reining stated that she had reasonable suspicion that plaintiff was still concealing contraband/narcotics,

which led defendant Hanratty to approve the extension. Dkt. 31 at 5–6. As evidence, plaintiff points to the dry cell watch authorization form, which states that the reason for the extension was that IIU had a reasonable suspicion to belief plaintiff was still concealing contraband. Dkt. 31-1 at 2. It appears that because defendant Reining is part of the IIU plaintiff believes she was the one who made the decision to extend the dry cell watch. *See* Dkt. 31 at 5–6. However, plaintiff has not submitted any evidence to rebut defendants' showing that defendant Reining was not involved in the dry cell watch, and that it was Mr. Kinne who was the person from IIU who made the recommendation. *See* Dkts. 30-4 at 4, 30-2 at 5. Therefore, plaintiff has not shown a triable issue of fact concerning defendant Reining's involvement in a conspiracy to violate his constitutional rights.

Defendants also argue that plaintiff's § 1985 claim fails as to both defendants because a conspiracy claim under § 1985 cannot survive without a viable § 1983 claim. *See* Dkt. 30 at 19. Indeed, "the absence of a section 1983 deprivation of rights precludes a section 1985 conspiracy claim predicated on the same allegations." *Caldeira v. Cnty. of Kauai*, 866 F.2d 1175, 1182 (9th Cir. 1989). As stated above, the Court recommends that plaintiff's only remaining § 1983 claim, predicated on the same dry cell watch extension, be dismissed because defendants are entitled to qualified immunity. *See supra* section III. Therefore, plaintiff's § 1985 claim must also fail.

Even if plaintiff had a viable § 1983 claim, his § 1985 claim would still fail because he does not allege or show that he was discriminated against, which is required to establish the second element of this claim. *See Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971) ("The language requiring intent to deprive of equal protection, or equal privileges and immunities, means that there must be some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action."); *Stafne v. Zilly*¸337 F. Supp.3d 1079,

1089–90 (W.D. Wash. 2018) (dismissing § 1985 claim because the plaintiff did not "allege the requisite racial animus"). This Court previously informed plaintiff that his complaint did not explain how he was treated differently from others similarly situated and dismissed his equal protection claim with leave to amend. *See* Dkt. 22. Plaintiff did not amend his complaint and has not provided any evidence of discrimination.

Based on the foregoing, the Court recommends that defendants' motion for summary judgment on plaintiff's § 1985 conspiracy claims be granted and plaintiff's claims be dismissed with prejudice.

**CONCLUSION**

The undersigned recommends that defendants' motion for summary judgment (Dkt. 30) be granted and all of plaintiff's remaining claims should be dismissed with prejudice.

Pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), the parties shall have fourteen (14) days from service of this Report to file written objections. *See also* Fed. R. Civ. P. 6. Failure to file objections will result in a waiver of those objections for purposes of *de novo* review by the district judge, *see* 28 U.S.C. § 636(b)(1)(C), and can result in a waiver of those objections for purposes of appeal. *See Thomas v. Arn*, 474 U.S. 140, 142 (1985); *Miranda v. Anchondo*, 684 F.3d 844, 848 (9th Cir. 2012) (citations omitted).

Accommodating the time limit imposed by Rule 72(b), the Clerk is directed to set the matter for consideration on **February 18, 2022**, as noted in the caption.

Dated this 28th day of January, 2022.

J. Richard Creatura
Chief United States Magistrate Judge

REPORT AND RECOMMENDATION - 14